UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.B.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN J. O'MALLEY, et al.,<br><br>　　　　　Defendants. | Case No. 24-cv-00307-NC<br><br>**ORDER REVERSING ADMINISTRATIVE LAW JUDGE DECISION AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>Re: ECF 11, 12, 14 |

　　　　Claimant D.B. appeals from an Administrative Law Judge's denial of disability insurance benefits for the period of May 15, 2014, to August 14, 2018. D.B. argues the ALJ erred in determining his residual functional capacity (RFC) by improperly weighing medical opinions and failing to account for his allegations of pain, including by discounting his subjective testimony. D.B. also argues the ALJ erred at steps four and five by finding D.B. could perform past relevant work or, in the alternative, had acquired skills transferable to other jobs available in significant numbers in the national economy. The Court concludes the ALJ's RFC determination is not supported by substantial evidence because he erred in weighing the medical opinions, inadequately considered D.B.'s pain, and did not provide clear and convincing reasons for discounting D.B.'s testimony. The Court declines to reach the parties' arguments as to steps four and five, which depend on the RFC determination. Accordingly, the Court reverses the ALJ's decision at the RFC determination and remands for further proceedings.

## I. BACKGROUND

### A. Procedural Background

The Court recounts only part of this case's lengthy procedural history. On June 27, 2014, D.B. filed a Title II application for disability insurance benefits for a period beginning January 1, 2014. AR 10. D.B. later amended the alleged onset date of disability to May 15, 2014. AR 10. In 2019, an ALJ issued a partially favorable decision finding D.B. disabled as of August 15, 2018. AR 387, 405. In 2022, following remand by the Court, AR 1090, an ALJ again concluded that D.B. was not disabled prior to August 15, 2018. AR 1109, 1127. D.B. appealed and the Appeals Council remanded to an ALJ to reconsider the period between May 15, 2014, and August 15, 2018. AR 1136–39. On November 24, 2023, the ALJ issued an unfavorable decision finding D.B. was not disabled during this period. AR 931, 950. Hearings before an ALJ occurred in 2016, 2018, 2021, and 2023. AR 32, 412, 965, 1006.

D.B. appealed the November 24, 2023, decision to the Court on January 18, 2024. ECF 1. D.B. filed a motion for summary judgment. ECF 11 (Mot.). Commissioner O'Malley opposed D.B.'s motion and filed a cross-motion for summary judgment. ECF 12. D.B. filed a reply. ECF 14. All parties have consented to magistrate judge jurisdiction. ECF 6, 7.

### B. ALJ Decision

In his November 24, 2023, decision, the ALJ followed the five-step process under 20 CFR § 404.1520(a) to determine whether D.B. was disabled prior to August 15, 2018. At the first three steps, the ALJ concluded: (1) D.B. had not engaged in substantial gainful activity since his alleged disability onset date of May 15, 2014; (2) D.B. had severe impairments including diabetes mellitus, diabetic peripheral neuropathy, obesity, hernia, osteoarthritis of the bilateral hips, and asthma, and non-severe impairments of hypertension and left kidney removal; and (3) D.B. did not have an impairment or a combination of impairments that met or equaled a listed impairment. AR 937–42. Prior to step four, the ALJ determined D.B. had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except that claimant could frequently perform postural activities of stooping, crouching, kneeling, balancing, and climbing ramps/stairs; could not crawl; could not climb ladders, ropes, or scaffolds; could not work around unprotected heights; had to avoid odors, dusts, gases, fumes, pulmonary irritants; and had to avoid concentrated exposure to extreme heat, extreme cold, and heavy machinery.

AR 942. At step four, the ALJ concluded D.B. could perform his past relevant work as a volunteer coordinator and his composite job as a chaplain, substance abuse coordinator, and education dean. AR 948. At step five, the ALJ alternatively concluded that D.B. could perform other work available in significant numbers in the national economy based on transferrable skills he acquired from his past relevant work. AR 949. As such, the ALJ concluded D.B. was not disabled from May 15, 2014, to August 14, 2018. AR 949–50.

## II. LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). Even when the ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

3

### III. DISCUSSION

#### A. The Residual Functional Capacity Determination Relies on Legal Error and is Not Supported by Substantial Evidence

D.B. argues that ALJ erred in determining his RFC by failing to properly weigh the medical opinions and consider D.B.'s chronic pain. Mot. 6–10. The Court agrees.

A claimant's RFC is a determination of how much the claimant can still do in a work setting despite physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all medical and nonmedical evidence, including descriptions and observations of the claimant's limitations provided by the claimant, family, friends, and others. 20 C.F.R. §§ 404.1545(a)(3), (e); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). The ALJ must also consider the limiting effects of all impairments, including those that are not severe, as well as "the claimant's subjective experiences of pain" and other symptoms. 20 C.F.R. §§ 404.1545(a)(3), (e); *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

##### 1. The ALJ's Weighing of the Medical Opinions is Inconsistent and Unsupported by Substantial Evidence

An ALJ must evaluate every medical opinion in evidence and consider various factors in determining the weight to give each opinion. 20 C.F.R. § 404.1527(c). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (citation omitted).

For claims filed prior to March 27, 2017, ALJs distinguish between medical opinions from three types of "acceptable medical sources," 20 C.F.R. § 404.1527(a)(1): "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. Generally, "the opinion of a treating physician is [] entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than

4

1 that of a non-examining physician." *Id.* An ALJ may only reject or discount the opinion
2 of a treating or examining physician that is contradicted by another medical opinion by
3 "giving 'specific and legitimate reasons' that are supported by substantial evidence." *Id.*;
4 *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Nonetheless, an ALJ "need not accept
5 the opinion of any physician, including a treating physician, if that opinion is brief,
6 conclusory, and inadequately supported by clinical findings." *Ford*, 950 F.3d at 1154.
7 Moreover, "[d]epending on the particular facts in a case, and after applying the factors for
8 weighing opinion evidence, an opinion from a medical source who is not an acceptable
9 medical source," such as a nurse practitioner or physical therapist, "or from a nonmedical
10 source may outweigh the medical opinion of an acceptable medical source, including the
11 medical opinion of a treating source." 20 C.F.R. § 404.1527(f)(1).

   Here, the ALJ considered the medical opinions of Doctors Greene, McMillan, Bayar, Lipson, and Cirksena, and of occupational therapist Kaufman, in determining D.B.'s RFC. AR 944–47. However, the ALJ erred in failing to evaluate these opinions consistent with the guidelines for claims filed prior to March 27, 2017, and by determining an RFC that conflicts with various aspects of medical opinions to which he afforded significant or great weight.

   The ALJ afforded great weight to the medical opinions of Greene and Bayar, both State agency medical consultants. AR 945. However, neither physician appears to have conducted a physical exam of D.B. *See* AR 67–75, 77–84. Instead, both physicians reviewed D.B.'s medical records, multiple of which came from unknown sources, and which Greene notes were "[l]imited." AR 70.[1]

---

[1] The ALJ afforded the opinion of another nonexamining doctor, medical expert Dr. Criksena, partial weight in determining the RFC because Dr. Cirksena did not consider D.B.'s hernia. This weighting is supported by substantial evidence. D.B. argues the ALJ erred in its consideration of Cirksena's medical opinion in determining whether D.B. met or equaled a listing at step three, not in the RFC determination. Mot. 7–8. However, because D.B. does not argue that he does in fact meet a listing, the Court declines to address his arguments as to the weighting of Cirkensa's opinion at that step. *See* Mot. 7–8 (arguing only that crediting Cirksena's opinion was not harmless because it was used to discount D.B.'s subjective testimony for the RFC).

5

On the other hand, the ALJ afforded Lipson's medical opinion, a Physical Functioning Questionnaire from January 2016, little weight. D.B. argues Lipson's opinion should have been given more weight because Lipson was D.B.'s treating physician. However, Lipson's own notes regarding D.B.'s patient visit on January 11 or 12, 2016, state that it was Lipson's first time meeting D.B. and that he was unfamiliar with D.B.'s history. AR 311, 326–28, 946. It is also unclear whether Lipson examined D.B. during this visit, as the ALJ noted. AR 946. Therefore, there is substantial evidence to support the ALJ's decision to not treat Lipson's opinion, which was formed after that first visit, with the weight of a treating physician, even though he went on to become D.B.'s treating physician.

Nonetheless, the ALJ did not provide specific, legitimate reasons for discounting Lipson's opinion. Lipson's opinion, even as a nonexamining doctor, does not appear any more "brief" or "conclusory" than those of nonexamining doctors Greene and Bayar. AR 946. And the ALJ's conclusion that Lipson relied on "some other unidentified source" in arriving at his opinion is not supported by substantial evidence. AR 946. Instead, Lipson's notes stated he would review D.B.'s medical records following the patient visit, and that a few days after the visit, he completed his opinion (the Physical Functioning Questionnaire) by considering "the patient's chart [and] especially the industrial rehab evaluation recently completed"—seemingly a reference to OT Kaufman's evaluation, discussed below. AR 326–27. The ALJ's determination that Lipson's opinion was not consistent with the medical record as a whole or clinical findings is also not supported by substantial evidence because Lipson's opinion appears consistent with the functional capacity examination by OT Kaufman.

Dr. McMillan and OT Kaufman both conducted physical exams of D.B.— McMillan in December 2014 at the request of the State agency and OT Kaufman in December 2015. AR 945–46. McMillan provided a five-page report including a functional capacity assessment consistent with light work and similar to the opinions of Greene and Bayar. *See* AR 308-09. The ALJ assigned McMillan's opinion great weight

6

as consistent with the medical evidence. AR 945.

OT Kaufman produced a 14-page report following three hours of functional capacity testing with D.B. AR 366–79. Kaufman noted a range of activities and postures "that appeared to significantly increase patient's pain," and concluded D.B. "appears to have pain[,] range of motion issues," and peripheral neuropathy that limit his functional abilities. AR 366, 370–71. Specifically, D.B. exhibited poor left hip strength and pain, an inability to lower or rise from the kneeling position without supports, and poor single leg balance with pain. AR 369–71. Kaufman observed straining and shortness of breath by D.B. to conclude D.B. could not lift more than 20 pounds or push and pull 100 pounds without increased pain. AR 374, 376. D.B. was able to stand for "3 minutes 10 seconds" before reporting "6/10" pain. AR 375. The ALJ assigned Kaufman's opinion "significant weight because it is generally consistent" with the medical evidence in the record and other opinions. AR 946.

Overall, the ALJ's weighing of the opinions is internally inconsistent and erroneous. As noted, the variation in weight given to nonexamining physician opinions from Greene and Bayar and from Lipson is unsupported by specific, legitimate reasons. In addition, the ALJ's decision to afford OT Kaufman's opinion less weight is not supported by substantial evidence, even though physical and occupational therapists are sources other than acceptable medical sources. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Revels*, 874 F.3d at 665 (holding ALJ erred by failing to provide germane reasons for assigning no weight to opinion of physical therapist who conducted functional capacity evaluation and provided a nine-page report). Kaufman's opinion was based on a lengthy examination and includes "better supporting evidence and a better explanation for the opinion" than the opinions the ALJ afforded great weight—from Greene and Bayar who did not examine D.B., and from McMillan who provided perfunctory explanation. *See* 20 C.F.R. § 404.1527; *cf. Revels*, 874 F.3d at 664 ("[T]he opinions of nonexamining doctors 'cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" (citation omitted)).

7

1    Moreover, the ALJ's conclusion that Kaufman's opinion was in accord with the
2    opinions of Greene, Bayar, and McMillan is inaccurate, as these opinions do not all
3    comport. Instead, the opinions of Greene, Bayar, and McMillan reach similar conclusions,
4    whereas the opinions of Kaufman and Lipson do the same. Greene and Bayar recommend
5    an RFC of light work with the ability to stand or walk six hours in an eight-hour day and
6    an unlimited push/pull limit. AR 72–73, 83–84. McMillian recommends a similar RFC
7    with standing or walking "at least six hours of an eight-hour workday," no limitations on
8    sitting, and an ability to stoop, kneel, or crouch for more than a third of the workday. AR
9    309. In contrast, Kaufman states D.B. would "benefit from a sedentary occupation" and
10   noted observable difficulties with prolonged standing, kneeling, and lifting and
11   pushing/pulling certain levels of weight. AR 366. Lipson also states that D.B. can walk
12   one block at most, can stand for five minutes at a time, and recommends D.B. stand or
13   walk less than two hours of an eight-hour workday and rarely lift twenty pounds. AR 311–
14   15. The ALJ does not resolve these discrepancies. *See Andrews*, 53 F.3d at 1039 (9th Cir.
15   1995) (noting ALJ is responsible for "resolving conflicts in medical testimony").

16   As such, the conclusions of Kaufman's opinion, even though afforded significant
17   weight, also conflict with the RFC reached by the ALJ. Similarly, despite noting that
18   Greene found D.B. "had frequent postural limitations"—an opinion afforded great weight
19   and similarly reflected in Dr. Bayar's opinion, AR 83—the ALJ determined that D.B.
20   "could frequently perform postural activities." AR 942, 945.

21   Finally, the ALJ does not appear to consider that D.B.'s impairments may have
22   worsened between the time of Greene, Bayar, and McMillan's opinions, formed between
23   August 2014 and January 2015, and the time of Kaufman and Lipson's opinions, formed at
24   the end of December 2015 and in January 2016, such that there may have been at least a
25   12-month period of disability from around January 2016 to August 15, 2018.

26   Upon remand, the ALJ must weigh the medical opinions in a manner consistent
27   with the guidelines for claims filed prior to March 27, 2017, and formulate an RFC
28   consistent with the weighting of those opinions.

8

### 2. The ALJ Fails to Consider D.B.'s Pain

Although the ALJ states that he "considered all impairments, regardless of severity, including the claimant's self-reported limitations and subjective pain, in assessing his residual functional capacity," it does not appear that he did so. AR 938. Rather, the RFC determination is not supported by substantial evidence because the ALJ fails to adequately consider and address D.B.'s pain and fails to provide clear and convincing reasons for discounting D.B.'s testimony as to his pain.

At the outset, D.B.'s argument that the ALJ did not properly consider D.B.'s pain when determining the RFC lacks clarity; he does not explain the source of the pain the ALJ failed to consider, mentioning pain from kidney disease, diabetic neuropathy, asthma, and hip degeneration. Mot. 8–9. D.B.'s imprecise invocation of pain in his motion is reflective of a broader trend throughout the record and hearings in this case. D.B.'s statements, records, and briefs, as well as the medical evidence, at various times reference pain in D.B.'s legs from diabetes, hip degeneration, and a hernia on his side, and pain generally, perhaps referring to all sources of pain. The parties also appear to commonly confuse and collapse D.B.'s diabetic leg pain and diabetic neuropathy, though D.B. and a medical expert attempt to distinguish the two. *See, e.g.*, AR 435–38 (medical expert stating neuropathy usually means numbness and not pain); AR 942–43 (ALJ stating D.B. "was unable to be on his feet for more than one hour because of diabetic neuropathy" but also that D.B.'s "biggest problem was diabetic nerve pain and not numbness and tingling"); AR 1031–32 (D.B. clarifying diabetic neuropathy, with "numbness and the tingling . . . wasn't my biggest problem. My biggest problem was diabetic nerve pain, and it was sharp pains up and down my shin bones"). *Compare* AR 44–45 (characterizing Gabapentin prescription as for pain) *with* AR 432 (characterizing Gabapentin prescription as for neuropathy).

The ALJ, similarly, does not specify what pain he considers in the RFC determination, such that it is unclear whether he considered each of D.B.'s impairments. By way of example, the Court highlights D.B.'s diabetic leg pain, which appears to have

9

most consistently fallen by the wayside in hearings and in consideration by the ALJ. Although the ALJ acknowledges that D.B. experiences "diabetic leg pain in both legs and severe arthritis of the left hip," he only concludes, broadly, that the "medical evidence, as extracted and cited below, does no support the claimant's allegations of fatigue or pain." The ALJ does not address D.B.'s leg pain with any specificity. *See* 20 C.F.R. §§ 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence . . . including limitations that result from your symptoms, such as pain, provided by you . . ."); *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir.) (holding RFC was not supported by substantial evidence where the ALJ did not consider headache pain testified to by the claimant).

### a. The ALJ Does Not Provide Clear and Convincing Reasons to Reject D.B.'s Subjective Pain Testimony

To determine whether a claimant's testimony of subjective pain is credible, an ALJ engages in a two-step analysis. *Garrison*, 759 F.3d at 1014. First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations and citation omitted). A claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted). In determining a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, consistency within their testimony, daily activities, work record, and observations from physicians. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ first finds "the claimant's medically determinable impairments could

1   reasonably be expected to cause the alleged symptoms." AR 938, 944. The ALJ does not
2   identify any evidence of malingering. Second, as noted above, the ALJ discounts D.B.'s
3   testimony by concluding D.B.'s allegations of "fatigue and pain" are not supported by the
4   medical evidence. AR 944; *see Ferguson v. O'Malley*, 95 F.4th 1194, 1198 n.1 (9th Cir.
5   2024) (concluding ALJ rejected claimant's symptom testimony where he found the
6   intensity and persistence of claimant's symptoms not entirely consistent with the record,
7   and where the RFC did not include limitations to account for severity and frequency of
8   claimant's pain). The ALJ then describes various medical records and physical
9   examinations. AR 944–47.

10  The ALJ fails to identify clear and convincing reasons for discounting D.B.'s
11  testimony as to his diabetic leg pain. Instead, he improperly cites to a dearth of objective
12  medial evidence affirming D.B.'s pain generally. *See Garrison*, 759 F.3d at 1014;
13  *Ferguson*, 95 F.4th at 1200–01 ("Again, the ALJ failed to specify *which* of Ferguson's
14  many symptoms were, in the ALJ's view, inconsistent with the record evidence."). The
15  ALJ's summary of medical evidence includes multiple examples of physical exams in
16  which D.B. appeared "in no distress." AR 946. However, the "ALJ did not explain, and
17  we do not see, how the absence of" distress or the presence of a normal gait, AR 944–47,
18  "are inconsistent with [D.B.'s] testimony about the severity and frequence of his" leg pain.
19  *See Ferguson*, 95 F.4th at 1200–01. For example, the ALJ cites no medical opinion stating
20  D.B.'s alleged level of leg pain would necessarily result in an irregular gait or constant
21  distress, or that a physician would equate chronic pain with distress in examination notes.
22  If anything, the ALJ's summaries of medical evidence demonstrate D.B. consistently told
23  doctors of his diabetic leg pain, was prescribed medication for the pain, and that his
24  diabetes was at times not well controlled. *See* AR 944–47.

25  To the extent the ALJ relies on D.B.'s daily activities to discount his subjective
26  testimony—though it is unclear if he does—the ALJ mischaracterizes aspects of D.B.'s
27  testimony as to his activity levels and provides inadequate explanation. First, in the ALJ's
28  description of D.B.'s daily activities, he states that D.B. goes grocery shopping every two

11

to three days "without significant difficulty." AR 943. This characterization is unsupported by the record. *See Revels*, 847 F.3d at 664, 667 (holding ALJ erred in discounting claimant's testimony based on her daily activities where the ALJ "omitted highly relevant" portions of the claimant's statements, which "repeatedly and consistently described the severe limitations on her ability to complete daily activities"). For example, during the 2016 hearing with an ALJ, D.B. stated that he had to psych himself up to walk 50 yards to the store, put off going to the store until he was out of items, chose lightweight food items if he had to buy a heavy item like milk, and had to rest for one to two hours after getting home. AR 49–50. Second, "the ALJ did not explain how, in his view, [D.B.'s] testimony about those daily activities is inconsistent with his testimony about the severity and frequency of his [leg pain]. And we see no reasonable inference that such an inconsistency exists." *Ferguson*, 95 F.4th at 1203. [2]

Finally, the Court notes that the ALJ may have taken a "backward approach" to determining D.B.'s credibility. *See Revels*, 874 F.3d at 666. The ALJ found D.B.'s "statements about the intensity, persistence, and limiting effects of his symptoms . . . inconsistent because the evidence as a whole indicates that, despite his impairments, the claimant could perform a range of light work as set forth in the residual functional capacity finding above." AR 944. However, because "an ALJ must take into account a claimant's symptom testimony when determining the RFC . . . [t]o determine the RFC first and then assess the claimant's testimony is to put the cart before the horse." *Revels*, 874 F.3d at 666 (cleaned up and citations omitted).

On remand, the ALJ must reconsider D.B.'s subjective pain testimony and offer clear, convincing reasons for rejecting any specific aspects of this testimony.

---

[2] The ALJ also failed to provide accurate, germane reasons for discounting testimony from D.B.'s family and friends, which he found was not fully consistent with the overall evidence and "appear to have relied exclusive[ly] on the claimant's self-report." AR 947; *see Diedrich v. Berryhill*, 874 F.3d 634, 640–41 (9th Cir. 2017) (noting a "lack of support from medical records is not a germane reason to give 'little weight'" to observations by lay persons). The testimony describes the family and friend's personal observations of D.B.'s impairments, despite what they perceived as D.B.'s downplaying of symptoms to them. *See* AR 461–67, 684–87.

## IV. CONCLUSION

Because the ALJ erred in weighing the medical opinions and failed to consider D.B.'s pain testimony, the Court reverses the ALJ's decision at the RFC determination and remands for further proceedings. The Court denies D.B.'s request to find him disabled and to remand for payment of benefits because it is not clear from the record that the ALJ would be required to find D.B. disabled and award benefits if D.B.'s testimony were taken as true. *See Garrison*, 759 F.3d 995, 1019–20.

**IT IS SO ORDERED.**

Dated: September 24, 2024

_____
NATHANAEL M. COUSINS
United States Magistrate Judge